## CHENANGO OYER AND TERMINER.

### JULY, 1845.

Before EDMONDS, Circuit Judge, and the Judges of the Court
of Sessions.

### THE PEOPLE v. JAMES C. GRIFFEN.

Mode of trying the question of present and continuing insanity, after an
acquittal on that ground on a trial for the principal offense.

The mode of discharging the accused from the asylum after the recovery of
his sanity.

The trial of the capacity of a deaf-mute to be a witness.

The wife of the prisoner used as a witness on the question of insanity.

THE prisoner was indicted for the murder of one Erastus
Coit.

It appeared on the trial that the prisoner was a farmer in
Chenango county, of about middle age, and with a wife and
five children.  He was a kind, inoffensive man, of very lim-
ited education, and of little or no force of character.

Coit was his hired man on his farm, and was of so affirmative
a character that in a short time he succeeded in taking the
prisoner's place, not only in the affection of his wife, but in
her bed and at her table, and finally took her away with him
to his own house.

The prisoner submitted to that for some time, with a sort of
stupor, and as if terrified into subjection by the threatened
violence of Coit, and his overbearing treatment of him, until
at length the neighbors, becoming scandalized, interfered, and
three of them went to Coit's house and got the prisoner, his
wife and Coit together, in order to put a stop to that state of
things, and induce Mrs. Griffen to leave Coit and return to her
friends.   As soon as Coit discovered the prisoner in his house,
he became angry and said to him:   "I understand you carry
a pistol to take my life, and you must get out of my house."
He then opened the door and told the prisoner to go out,
which he did.   In a few moments they heard a pistol shot out-
side the house, and they all hurried out.   The prisoner was

The People v. James C. Griffen.

then a short distance from the house, and his clothes were on fire. He seemed hurt, and walked along with a slow kind of a march, as if he did not notice any body, nor know much. He said nothing to any one, and made no effort to put out the fire. There was blood on him, and he was very pale, and seemed unconscious of any thing. It seemed that his pistol had gone off in his pantaloons pocket.

As the prisoner, in his wandering, came near to Coit, the latter said to him he was sorry he was such a fool. With that the prisoner stooped and seized a whiffle-tree, which happened to be lying on the ground near him, and with both hands struck Coit on the head with such rapidity that he inflicted two blows before the bystanders, though only two or three feet from him, could stop him. Coit died in a short time.

A great deal of evidence was given, going to show that from the time his wife left him, and for more than a year, he had been deranged.

Among other witnesses his wife was examined, by direction of the court, and, also, Dr. Brigham, the superintendent of the State lunatic asylum, at Utica, for whom the circuit judge had sent to be present at the trial. He, as an expert, witnessing the whole trial, hearing all the testimony, and observing the prisoner's deportment, gave a very decided opinion that he was now insane, but could probably be cured.

The jury rendered a verdict of not guilty, on the ground of insanity, and certified that the insanity still continued.

Thereupon the court, pursuant to section thirty-one of the Act to organize the State lunatic asylum, ordered him into safe custody, and to be sent to the asylum.

In the following year, May, 1846, the superintendent of the asylum reported to the circuit judge, as follows:

ASYLUM, UTICA, May 30, 1846.

DEAR SIR: You will easily call to recollection the case of James C. Griffen, whom you sent to this asylum, from Norwich. He appears to me to be well. For a while he was in

a confused state, but the entire removal from all the exciting causes of his insanity, with occupation, has seemed to restore his mind. He is now somewhat anxious, though reasonably so, to leave and go to live with his brother, in Wisconsin territory, and does not wish, or intend, ever to see his wife again, or go to the neighborhood where she is. His brother here, and other relatives, will join with him in giving any assurance you may wish that he will thus go away; and I think it would be proper, for he is, I find, naturally a very amiable and peaceful man. I have told his friends that all this is left to you, and I hope you will have the kindness to write me soon upon the subject, and state what kind of a writing, if any, will be acceptable in order to induce you to see fit to discharge him. I again repeat, that I think him well and not likely to relapse, and that the community will not be endangered by his release.

I see, by the papers, you are always at work. I wish you would exchange with some of our judges, and come into this region occasionally.

In haste, but truly with great respect,

Your obedient servant,

A. BRIGHAM.

Hon. John W. Edmonds.

To which the following reply was made:

New York, June 4, 1846.

Dr. A. Brigham—

Dear Sir: I am rejoiced, though by no means surprised, to learn from you the supposed recovery of Griffen. An important duty now devolves upon me in regard to your application for his release.

If I was at liberty to consult only my own feelings, my confidence in your knowledge of the disease of insanity, and in the accuracy of your judgment, would induce me at once to order his discharge, merely upon the letter which I have already received from you in regard to him.

The People v. James C. Griffen.

But when I remember that I am called upon to let loose upon the world one who has, beyond doubt, taken the life of a fellow being without just cause, the danger that any laxity or want of care on my part, may hereafter be drawn into a precedent to warrant the release of some one much less worthy of trust than Griffen undoubtedly is, admonishes me that I ought to omit no precaution in ascertaining his restoration to reason.

A year has not yet elapsed since, on his trial for murder, I instructed the jury that he ought to be acquitted, on the ground that his mind was too disordered to render him responsible as a moral agent.

I was, at the time, justified in the course I took, not only by the nature of the testimony, by the opinion of the public prosecutor, of the jury, and of my associates on the bench, but also by the opinion derived from your extensive experience and enlightened judgment.

Ordering him to be sent to your asylum, was, under the circumstances, a matter of course, not merely that he might be cured of the disease which had produced such lamentable effects, but that the public might have an assurance that he would be restrained from any repetition of violence.

I cannot, therefore, but feel that I owe it as a duty to the administration of justice, and to the peace of society, to require, as a condition of his release, evidence equally satisfactory of his recovery, for I am fully aware that the character of the prisoner, of itself affords, if he has recovered, a sure guaranty against any further violence on his part.

There are other considerations which admonish me to be very careful. One is the consciousness that my own notions of the disease of insanity are much in advance of the rule of law as now established, and which I am required to administer. And the other is, the very strong sympathy for the prisoner which was excited in the vicinity by the grievous wrong which had been inflicted upon him by his victim.

It is in view of all these considerations that I am induced to require, as a compliance with the statute which allows me

17—vol. 1.

to discharge the prisoner, "if upon due investigation it shall appear safe, legal and right," to do so :—

1. That Griffen himself make the application to me. If his education is sufficiently good, I should desire that he write and compose it himself; and, if not, that it should be written down for him, as nearly as possible, in his own language. And in his application I shall want him to allude to, and, as far as possible, describe to me, the incidents and events which led to his disease.

2. An official statement from yourself, as superintendent, setting forth his condition when received into the asylum, the nature and progress of his disease, and his present condition in that regard.

3. A statement from such of your subordinates as have had opportunities of observing his conduct and the progress of his disease.

4. The opinion of the trustees as to his restoration, so that, if not already acquainted with his case, they may favor me with an investigation of it.

5. An assurance from such of his relatives as are of competent means, that they will, on his release, immediately take charge of him and remove him to his brother's, in Wisconsin ; and this, not because I desire to banish a criminal from our territory, and inflict him upon that of any other part of our nation, but because I deem it material that he should not be permitted to revisit scenes which cannot fail to disturb him.

And you will allow me to suggest that in all the documents which may be forwarded to me, particular reference be made to the infidelity of his wife and the events which sprung from it, because while on all other subjects his mind may "keep touch and time," on that it may jar, and it will be only thus that I can determine whether it will be safe and right to permit him to go at large.

In indicating to you, agreeable to your suggestion, the character of the evidence which I shall require before passing upon the question of his release, I do not mean to be understood as indicating the nature of the judgment which I shall

pronounce upon it, and the prisoner and his friends must understand that the shortness of the time of his sojourn with you will cause me to be both astute and careful on the question which will be submitted to me.

, As this will be (at least, quasi) a legal proceeding, it will be proper that his petition and the statement of your subordinates should be verified by oath, such verification not being necessary as to yourself or the trustees, as you and they are State officers, acting under the oath of office in this matter.

Respectfully yours,

J. W. EDMONDS, Circuit Judge.

The following was received in answer:

ASYLUM, UTICA, June 11, 1846.

DEAR SIR: Your letters are received, and I should have acknowledged them sooner, had I been at home. I admire your caution, for as a quite general rule I think a person acquitted of murder on the ground of insanity ought ever to be kept shut up. Kleim ought to be, but if ever there is a proper exception I think Griffen's is. I have not spoken with him yet, but he will address you as you propose, and we will give you all the aid in our power. I do not think there need be any haste, and perhaps he may as well remain here a while longer.

I have been at Auburn, attending court in case of Wyatt, and in that of Freeman, to follow. I wish you was there. Wyatt, I rather think, is a rogue, and not crazy, but Freeman, the negro, who killed a whole family, is a poor, demented creature, nearly an idiot, but the popular feeling is of course against him strong. No juror has yet been sworn.

Expecting to send you the proper documents soon, I remain truly, with great respect,

Your obedient servant,

A. BRIGHAM.

Hon. JOHN W. EDMONDS, New York city.

Afterward, and in March, 1849, the application was renewed upon the following papers:

STATE LUNATIC ASYLUM, UTICA, March 22, 1849.

To Hon. J. W. EDMONDS —

DEAR SIR : This letter is accompanied by a petition to you from James C. Griffen, drawn up and written entirely by himself, without any suggestion except from your letter. I feel confident that he is now sane, and that he may as safely have his liberty as any other man — in fact he is and ever has been a remarkably peaceable man. That he was bereft of reason at the time he committed the crime which caused his being sent here, I have no doubt — but he was tortured enough to drive any man of ordinary sensibility to madness.

Hoping you will grant his petition, I am, most truly, with great respect,          Your obedient servant,

A. BRIGHAM.

To Judge EDMONDS —

DEAR SIR : I now take a pen to write to you to inform you of my health which is verry good. I have enjoyed good health for quite a long time. I think my mind and judgment has greatly improved. I think if I could once more be restored to liberty I should be able to provide for myself and children. Dear sir I think you have had something of an idea of the impositions and the insults that was practised on me, though there was many more that I think probable you never heard of, and in consequence of those impositions I became verry much deranged, and dear sir I think you must be satisfied that from the time I first became acquainted with the improper conduct of my wife and Erastus Coit untill after I was brought before you for trial, I was by times verry much deranged, so much deranged that at times that I scarcely knew what I was a doing, and dear sir if you were ever acquainted with insane people you are sensible that impositions practised on them to still them is like addin fuel to fire to put it out, and dear sir as you are the only person I have to look to for a

The People v. James C. Griffen.

pardon for the awful crime I have committed, I would gladly on my bended knees implore your pardon.

JAMES C. GRIFFEN.

STATE LUNATIC ASYLUM, March 25th, 1849.

STATE LUNATIC ASYLUM, UTICA, March 26, 1849.

Hon. J. W. EDMONDS —

DEAR SIR: I understand that James C. Griffen, who is now confined in this institution, and who was acquitted on an indictment for murder in Chenango county, on trial before you, has made an application for his discharge.

I have known and frequently observed Mr. Griffen during the three years he has been in the asylum, and from what I have seen and known of him, I have no doubt that he is now sane and harmless, and I am clearly of opinion that it is proper and right to discharge him.

Very respectfully, yours,

CHARLES A. MANN,

One of the managers of asylum.

I have known Mr. Griffen during the time he has been in the institution, and have heard Dr. Brigham frequently express his opinion respecting him, and I fully concur with Mr. Mann in what he has written.

E. A. WETMORE, Treasurer.

Whereupon the following mandate was issued:

Whereas, at a Court of Oyer and Terminer held before me as circuit judge, and others, in and for the county of Chenango, in the month of July, 1845, James C. Griffen was arraigned and tried for the murder of one Erastus Coit, and on such trial was acquitted of such charge on the ground of insanity.

And, whereas, the said court being certified by the jury impaneled to try the said indictment, of such insanity, did thereupon carefully inquire and ascertain that such insanity

did then continue in full force; and pursuant to the statute in such case made, did thereupon order the said James C. Griffen in safe custody, and to be sent to the State lunatic asylum.

And, whereas, application is now made to me by the said James C. Griffen and by Dr. A. Brigham, the superintendent of the said asylum, for the discharge of the said Griffen from the said asylum, which said application is accompanied by a certificate of the said superintendent that said Griffen is now sane, and that he may as safely have his liberty as any other man; by a certificate from Charles A. Mann, Esq., one of the managers of the asylum, that said Griffen is now sane and harmless, and that it is proper and right to discharge him; and by a certificate of E. A. Wetmore, Esq., the treasurer of said asylum, concurring with Mr. Mann in his opinion.

Now, therefore, by virtue of the power vested in me by section forty-two of the act entitled "An act to organize the State lunatic asylum, and more effectually to provide for the care, maintenance and recovery of the insane," passed April 7, 1842, I do, for the cause aforesaid, and it appearing to me, on due investigation, to be safe, legal and right to grant such application, hereby order that the said James C. Griffen be forthwith discharged from the said asylum.

In witness whereof, I, John W. Edmonds, one of the justices of the Supreme Court, have hereto set my hand. this 29th day of March, 1849.

J. W. EDMONDS.